## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| **TIMMONS GROUP, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: <u>3:21-cv-717</u> |
| | ) | |
| **EDWARD G. MCGAVRAN, III** | ) | |
| <u>Serve</u>:  220 Cape August Place | ) | |
| Belmont, North Carolina 28012 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JOEL CIPCIC d/b/a RADIANT ENERGY** | ) | |
| **GROUP** | ) | |
| Serve:  5630 Turkey Oak Drive | ) | |
| Mint Hill, NC 28227 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **MANDIE LEE CIPCIC** | ) | |
| **d/b/a RADIANT ENERGY GROUP** | ) | |
| Serve:  5630 Turkey Oak Drive | ) | |
| Mint Hill, NC 28227 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **SOUTHERN TRADESMEN SERVICE** | ) | |
| **GROUP, LLC d/b/a STG SOLAR SOUTHERN** | ) | |
| **TRADESMEN** | ) | |
| <u>Serve</u>: Registered Agents, Inc. | ) | |
| 4445 Corporation Lane, Suite 264 | ) | |
| Virginia Beach, VA 23462 | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

Timmons Group, Inc. ("Timmons"), by counsel, hereby files its Complaint against

Defendants Edward G. McGavran, III ("McGavran"), Joel Cipcic d/b/a Radiant Energy Group

and ("Mr. Cipcic"), Mandie Lee Cipcic d/b/a Radiant Energy Group ("Mrs. Cipcic") (Mr. Cipcic

and Mrs. Cipcic are collectively, "REG"), and Southern Tradesmen Service Group, LLC d/b/a STG Solar Southern Tradesmen ("STG Solar") (McGavran, Mr. Cipcic, Mrs. Cipcic, and STG Solar are collectively, "Defendants") and states as follows:

## THE PARTIES

1.      Timmons is a Virginia corporation with its principal place of business located at 1001 Boulders Parkway, Suite 300, North Chesterfield, Virginia 23225.

2.      Timmons provides civil engineering, structural, environmental, electrical, geotechnical, GIS/ geospatial technology, landscape architecture and surveying services to a diverse client base. Timmons has 18 branch offices in five states including Virginia, Maryland, North Carolina, Arizona and Texas, and Washington, D.C.

3.      Upon information and belief, Defendant Ted McGavran is a citizen of North Carolina, residing at 220 Cape August Place, Belmont, North Carolina 28012.

4.      In or about March 2018, McGavran began employment with Timmons in its Charlotte, North Carolina office as a Senior Project Manager focusing on renewable energy.

5.      McGavran provided services on behalf of Radiant Energy and/or STG Solar either as an independent contractor or employee during his employment with Timmons, and since the cessation of his employment with Timmons in violation of his contractual, fiduciary and other legal obligations to Timmons.

6.      Upon information and belief, Mr. Cipcic and Mrs. Cipcic are citizens of North Carolina. REG is a direct competitor of Timmons.

7.      STG Solar is a North Carolina limited liability company and is registered to do business in the Commonwealth of Virginia. STG Solar is a direct competitor of Timmons.

## JURISDICTION AND VENUE

8.      This Complaint alleges seven causes of action: (1) Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) Misappropriation of Trade Secrets in Violation of the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336; (3) Conspiracy in Violation of Virginia Code § 18.2-499; (4) Conspiracy in Violation of Virginia Common Law; (5) Breach of Fiduciary Duty; (6) Breach of Contract; and (7) Conversion.

9.      This Court has original jurisdiction over the first Count of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this claim arises under the federal Defend Trade Secrets Act. This Court has supplemental jurisdiction over the state law and common law claims pursuant to 28 U.S.C. § 1367(a) because such claims form part of the same case or controversy as the federal claim and because judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state law claims.

10.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 because, on information and belief, there is complete diversity of citizenship between Timmons, the plaintiff, and all Defendants, and Timmons seeks to recover damages in excess of $75,000.

11.     This Court has personal jurisdiction over Defendant McGavran because on July 3, 2018, McGavran and Timmons entered into a valid and binding *Proprietary Information, Assignment of Inventions, Non-Competition and Non-Solicitation Agreement* (the "Employment Agreement")[1], which specifically provides that McGavran "expressly and irrevocably consents and submits to the exclusive jurisdiction and venue of" the Circuit Court for the County of Chesterfield, Virginia, or the United States District Court for the Eastern District of Virginia, Richmond Division.  Ex. 1 at § 12.

---

[1] A copy of the Agreement is attached hereto as **Exhibit 1.**

12.     Upon information and belief, this Court has personal jurisdiction over Defendants REG and STG Solar because both REG and STG Solar do business in the Commonwealth of Virginia and have engaged in the conduct alleged in this Complaint in Virginia. Specifically, the Timmons trade secret and confidential information that REG and STG Solar solicited from McGavran and that all Defendants misappropriated for the benefit of REG and/or STG Solar is housed on Virginia servers and is located at Timmons's headquarters, which is in this judicial district. In addition, upon information and belief, REG and STG Solar used the Timmons trade secret and confidential information to usurp and/or interfere with business opportunities or expectancies belonging to Timmons located in Virginia. REG and STG Solar also acted in combination with McGavran to accomplish the theft of the trade secret and confidential information of Timmons, a Virginia corporation, by unlawful means.

13.     This Court also has jurisdiction over REG and STG Solar pursuant to Virginia's long arm statute, Va. Code § 8.01-328.1, because, upon information and belief, both REG and STG Solar transact business in Virginia, contract to supply services or things in Virginia, and have caused the harm alleged in this Complain on Timmons in Virginia.  Further, STG Solar is authorized to transact business in Virginia with its Virginia registered agent located at 4445 Corporation Lane, Suite 264, Virginia Beach, Virginia 23462.

14.     Venue is proper in this Court as to McGavran because the Agreement specifically provides that the Virginia Circuit Court for the County of Chesterfield or the United States District Court for the Eastern District of Virginia, Richmond Division are the exclusive forums for any dispute arising under or relating to the Agreement. Ex. 1 at § 11.

15.     Venue is also proper in this Court as to the remaining defendants pursuant to 28 U.S.C. § 1391(b) because part of the events or omissions giving rise to the claims in this action

occurred in the Richmond Division of the United States District Court for the Eastern District of Virginia and also because at least one Defendant, McGavran, is subject to the Court's personal jurisdiction with respect to this action.

**FACTS**

16.     The professional civil engineering, power engineering and systems planning, environmental, geotechnical, GIS/geospatial technology, landscape architecture and surveying services industry in which Timmons operates is a highly competitive one.

17.     Timmons maintains a database which houses confidential client information, including client pricing, standard operating procedures, training materials; company documents which reflect high-level business and strategic decisions made by Timmons; Timmons' financial information; customers and prospective customers; information subject to non-disclosure agreements by and between Timmons and its customers; and other highly confidential and trade secret data.

18.     Timmons' trade secrets and confidential information are not known by the public or Timmons' direct competitors, such as REG and STG Solar, and would be extremely valuable to them. Timmons' trade secrets and confidential information derive independent economic value from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from their disclosure or use.

19.     At all relevant times, Timmons has taken efforts to maintain the secrecy of its trade secrets and confidential information by, at least, maintaining confidentiality obligations with its employees, vendors and customers, including having employees, vendors and customers enter into restrictive covenant, confidentiality, and invention assignment agreements, maintaining information technology and institutional protections to prevent disclosure by using

measures including, but not limited to, cybersecurity software, password protected systems, physical and electronic security systems, and limiting network access to high level employees such as McGavran.

20.     McGavran had access to the above-described confidential information and trade secrets through his employment with Timmons.

## McGavran's Employment with Timmons

21.     In or around March 2018, Timmons entered into employment negotiations with McGavran, and subsequently hired McGavran. McGavran, however, failed to disclose to Timmons that prior to his employment with the same he entered into a certain Noncompetition and Nonsolicitation Agreement, dated on or about August 23, 2016, with another entity, Electric Power Incorporated ("EPI").

22.     Subsequent to Timmons hiring McGavran and his continued failure to disclose to Timmons his Noncompetition and Nonsolicitation Agreement with EPI, EPI asserted various claims against both Timmons and McGavran stemming from McGavran's restrictive covenant obligations to EPI. As a result, Timmons, McGavran, and EPI entered into a certain Settlement Agreement and General Release dated July 10, 2018 pursuant to which, among other things, Timmons paid the sum of $175,000 (the "Settlement Payment") in exchange for EPI's release of all claims against Timmons and McGavran, including EPI's release of McGavran from all of his restrictive covenant obligations to EPI.

23.     Also, in July 2018, and in exchange for Timmons paying to EPI the Settlement Payment to release its claims against McGavran, McGavran entered into the Employment Agreement with Timmons.

6

24.     As additional consideration for entering into the Employment Agreement, McGavran received continued employment, a generous six-figure salary, benefits, training, and access to trade secrets and confidential information.

25.     Among other things, the Employment Agreement contains valid and enforceable restrictive covenants.

26.     For example, the Employment Agreement contains a Proprietary Information provision that provides as follows:

> Employee agrees that all Assigned Inventions and all other financial, business, legal, personnel and technical information, relating to the Company's employees, Affiliates (as such term is defined below) customers, vendors, suppliers, distributors and other business partners, which Employee develops, learns or obtains during Employee's employment or that are received by or for the Company in confidence, constitute ***"Proprietary Information"***.  Employee will hold in strict confidence and not disclose or, except within the scope of Employee's employment, use any Proprietary Information.   Proprietary Information will not include information that Employee can document is or becomes readily publicly available without restriction through no fault of Employee.   Upon termination of Employee's employment, Employee will promptly return to the Company all items containing or embodying Proprietary Information (including all copies), except that Employee may keep Employee's personal copies of (a) Employee's compensation records, and (b) this Agreement. "***Affiliates***" means all entities that control, are controlled by or are under common control with the Company.

Ex. 1 at § 4.

27.     In addition, the Employment Agreement contains a Non-Competition provision that provides as follows:

> Employee agrees that, during the term of Employee's employment with the Company and for a period of two (2) years following the cessation of Employee's employment for any reasons, or two years from the date a court of competent jurisdiction enters a final order enforcing the terms of this provision, whichever is later, Employee shall not, directly or indirectly:
>
> **a.**     Own or manage any business offering the Restricted Services within the Restricted Territory (except that this provision shall not prohibit the passive ownership of less than 5% of any publicly-traded company, so long as Employee does not directly participate in the management thereof);

   **b.**  Work as an employee, consultant, or independent contractor in a Competing Position for any individual or entity offering the Restricted Services within the Restricted Territory; or

   **c.**  Work as an employee, consultant, or independent contractor in a Competing Position for any Restricted Company.  ***"Restricted Company"*** shall mean those customers of the Company listed on <u>Exhibit B</u>, which is incorporated by reference herein.

For the purposes of this Agreement, ***"Restricted Services"*** shall mean the civil engineering, power engineering and systems planning, environmental, geotechnical, GIS/geospatial technology, landscape architecture and surveying services offered by the Company as of the date any conduct by Employee that may be deemed a violation of this provision commences, or if such act occurs after the termination of Employee's employment, then as of the date Employee's employment terminates for any reason. ***"Competing Position"*** shall mean any position that involves duties that are the same as or substantially similar to the duties that Employee performed for the Company within the last twelve (12) months of Employee's employment with the Company. ***"Restricted Territory"*** shall mean Virginia, Maryland, Texas and North Carolina.

Ex. 1 at § 5.

   28.  The Employment Agreement also contains a Non-Solicitation provision that provides as follows:

   Employee acknowledges that Employee will obtain Proprietary Information about the Company and its customers, employees and/or independent contractors during the course of Employee's employment with the Company, and will develop relationships with the Company's customers, employees and/or independent contractors. Accordingly, Employee agrees that, during the term of Employee's employment with the Company and for a period of two (2) years following the cessation of Employee's employment for any reasons, or two years from the date a court of competent jurisdiction enters a final order enforcing the terms of this provision, whichever is later, Employee will not, directly or indirectly, on behalf of himself or any individual or entity, at any time or in any manner:

   **a.**  Solicit or induce, or attempt to solicit or induce, any employee or independent contractor of the Company to terminate his or her relationship with the Company for any reason whatsoever, or hire any individual or entity then employed or engaged by the Company or employed or engaged by the Company within a 12-month period preceding the solicitation or preceding the date on which Employee's employment with the Company ended, whichever is later, provided that Employee, on behalf of the Company, had interaction with, or gained confidential information about, such employee or independent contractor during Employee's employment with the Company; or

b.      Perform or provide, assist in the performance or provision of, or solicit to perform or provide the same, or substantially similar, work, products or services as done or provided by the Company during the term of Employee's employment with the Company, for any Customer other than in the performance of Employee's duties during Employee's employment with the Company. *"Customer"* means an individual or entity who engaged the Company to provide products or services within the two (2) years preceding the solicitation or preceding the date on which Employee's employment with the Company ended, whichever is later, provided that Employee, on behalf of the Company, had interaction with, or gained confidential information about, such Customer during the term of Employee's employment with the Company. Additionally, each Restricted Company listed on Exhibit B shall also be deemed a Customer for the purposes of this Section 6.

Ex. 1 at § 6.

29.     Further, in the Employment Agreement McGavran acknowledged and agreed that:

any breach or threatened breach of this Agreement will cause irreparable harm to the Company for which damages would not be an adequate remedy, and, therefore, the Company will be entitled to injunctive relief with respect thereto (without the necessity of posting any bond) in addition to any other remedies.  In addition, the Company shall be entitled to recover its costs and attorney fees for any action to enjoin or otherwise seek recovery for any breach by Employee of this Agreement.

Ex. 1 at § 10.

30.     McGavran agreed that the Employment Agreement "and any dispute regarding the meaning, effect, validity or enforcement of [the Employment Agreement] shall be governed by the laws of the Commonwealth of Virginia without regard to the conflict of laws provisions thereof." Ex. 1 at § 12.

31.     McGavran signed the Employment Agreement of his own free will, and Timmons fully expected him to strictly abide by the terms and conditions therein.

**Misappropriation of Timmons' Confidential Information and Trade Secrets to REG and STG Solar, both During and After McGavran's Employment with Timmons**

32.     Timmons owes its success, in part, due to its focus on providing high quality project acquisition due diligence, interconnection, solar design, engineering, decommissioning,

and project development services to its customers.  The same or similar services are also offered by REG and, upon information and belief, STG Solar, both of which are competitors of Timmons.

33.     Timmons employs highly trained and knowledgeable engineers such as McGavran to provide its solar engineering, decommissioning and other services, and also to maintain its customer relationships.

34.     Timmons' decommissioning and other electric, structural, and civil engineering services and product plans are critical to its success, and constitute confidential, essential tools for Timmons to use in obtaining customer contracts. Timmons' cost and pricing information is also critical to its success and constitutes highly confidential, trade secret information.

35.     By way of example, one of the several and extensive measures undertaken by Timmons to protect its confidential and trade secret information is having its customers and/or vendors enter into a form Master Services Agreement which contains the following Proprietary Information provision:

> Except when otherwise authorized in writing by Timmons Group, all computer programs, documentation, drawings, specifications, technical data, digital data, and other information furnished to Client by Timmons Group or developed by Timmons Group in connection with the performance of Services are, and will remain, the property of Timmons Group and may not be copied, reproduced, disclosed or used in any way except in connection with the delivery of Services under this Agreement.

36.     Indeed, McGavran has sent the above-referenced provision to Timmons customers for their review and adherence during his employment.

37.     Notwithstanding his knowledge of his fiduciary and contractual duties to hold Timmons' confidential information and trade secrets in strict confidence, McGavran, on a

number of occasions, misappropriated Timmons' trade secrets to REG and STG Solar both during and after his employment with Timmons.

38.     Specifically, after reviewing McGavran's email inbox upon his separation of employment from Timmons in October 2021, it became apparent that on a significant number of occasions as far back as October 2020, McGavran copied ("cc'd") and/or blind copied ("bcc'd") REG's and STG Solar's Mr. Cipcic on emails with Timmons customers and/or vendors where he disclosed major customers, pricing information, strategies, methods, and documents subject to nondisclosure agreements.

39.     Specifically, McGavran forwarded emails containing the foregoing information to Mr. Cipcic's REG, STG Solar, and gmail email addresses.

40.     McGavran also forwarded to Mr. Cipcic decommissioning plans which contain highly sensitive and trade secret information, including but not limited to Timmons solar engineering and decommissioning plan methods, strategies, and pricing.

41.     Upon information and belief, McGavran began diverting, and REG and STG Solar began accepting and/or soliciting from McGavran, business opportunities and trade secret information belonging to Timmons as early as October 2020, over a year prior to his separation of employment with Timmons.

42.     Upon information and belief, REG and/or STG Solar used and misappropriated this confidential and trade secret information belonging to Timmons to attempt to usurp or usurp Timmons business opportunities.

43.     At no time did Timmons provide express or implied consent to the disclosure of its trade secrets by McGavran to REG.

44.    Neither REG nor STG Solar took action to address and reverse McGavran's misappropriation of Timmons's trade secrets to REG and STG Solar.

45.    During his employment with Timmons, McGavran also introduced Timmons customers to Cipcic so that, REG and/or STG Solar could win or attempt to win decommissioning work belonging to Timmons. Indeed, McGavran and Mr. Cipcic often scheduled conference calls with Timmons current and prospective customers in order to divert or attempt to divert business from the same to REG and/or STG Solar.

46.    Both REG and STG Solar knew or should have known that the Timmons' confidential information and trade secrets disclosed to them by McGavran were acquired by them by improper means. Indeed, the confidential and trade secret information being forwarded by McGavran to REG was disclosed to REG in a manner that would give a reasonable person reason to believe that it was derived by improper means and that it was being provided to REG and STG Solar without express or implied consent from Timmons.

47.    For example, in the days and weeks leading up to McGavran's separation of employment from Timmons on October 8, 2021, McGavran forwarded to both Mr. Cipcic's personal Gmail and REG/STG Solar email accounts construction drawings and decommissioning plans belonging to Timmons. McGavran continued his employment with REG immediately after his separation from Timmons.

48.    This was all the result of McGavran plainly breaching his Employment Agreement with, and fiduciary duties to, Timmons, but more significantly, misappropriating proprietary, trade secret, and confidential information belonging to Timmons.

**McGavran Performed Services on Behalf of REG**
**in Secret During His Employment with Timmons**

49.     McGavran performed services on behalf of REG and STG Solar while he was still employed by Timmons.

50.     Upon information and belief, in early 2021, McGavran decided that he no longer wanted to work for Timmons, and that he instead wanted to work for REG, a direct competitor of Timmons.

51.     Rather than immediately resigning from Timmons, McGavran continued his employment with Timmons so that he could misappropriate Timmons' confidential and proprietary information in order to use that information to further REG's and/or STG Solar's business.

52.     On June 8, 2021, McGavran forwarded a copy of his updated curriculum vitae to Mr. Cipcic's STG Solar email address.

53.     As early as February 2021 and while he was still employed by Timmons, McGavran solicited Timmons current or prospective customers on behalf of REG and even presented power point presentations on REG letterhead to such customers so that he could win business from the same for REG or STG Solar.

54.     McGavran failed to disclose his projects for REG and STG Solar to Timmons at that time.

**Timmons Learned that McGavran Accepted Employment with REG in October 2021**

55.     In October 2021, Timmons learned that McGavran had accepted a position with REG as its Principal Engineer of Record, Electrical Engineering, as was stated on McGavran's LinkedIn page.

56.     Again, McGavran did not inform Timmons of his new position with REG which, upon information and belief, entailed the same or substantially similar responsibilities as his position with Timmons.

57.     Subsequent to McGavran's separation from Timmons and upon learning of his new position with its competitor, Timmons conducted a review of McGavran's Timmons email inbox and outbox and discovered the wrongful conduct described herein.

58.     Accordingly, on October 20, 2021, outside counsel for Timmons issued a letter to McGavran, reminding him of his contractual and other obligations to Timmons, and advising him to cease from violating the Employment Agreement, among other things. A true and accurate copy of that letter is attached as **Exhibit 2**.

59.     On October 22, 2021, outside counsel for Timmons issued a similar letter to Mr. and Mrs. Cipcic, placing them on notice of McGavran's Employment Agreement with Timmons. A copy of that letter is attached as **Exhibit 3**.

60.     Almost immediately after receiving the letter, which contained a document preservation notice given this anticipated litigation, McGavran deleted the information from his LinkedIn page in the "Experience" section describing his employment as REG's Principal Engineer of Record.

61.     On October 21, 2021, McGavran replied to the October 20 letter from Timmons's outside counsel and advised that he had resigned from REG. McGavran then, however, disclosed that he is currently providing services for another competitor of Timmons.

62.     Accordingly, McGavran has breached, and will continue to breach, his Employment Agreement with Timmons.

63.     Such breaches have caused and will continue to cause immediate, irreparable, and ongoing harm to Timmons.

### COUNT ONE – VIOLATIONS OF THE DEFEND TRADE SECRETS ACT
### (Against All Defendants)

64.     The allegations in paragraphs 1 through 63 above are incorporated by reference as if fully set forth herein.

65.     REG and STG Solar acquired the trade secrets of Timmons without the express or implied consent of Timmons.

66.     REG and STG Solar used improper means to acquire the trade secrets and at the time that they acquired the trade secrets knew or had reason to know that the knowledge of the trade secrets was:

   a.   derived from or through a person, McGavran, who had used improper means to acquire the trade secrets;

   b.   acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets; and/or

   c.   derived from or through a person, McGavran, who owed a duty to Timmons to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

67.     Timmons has been damaged by Defendants' violations of the Defend Trade Secrets Act.

### COUNT TWO – VIOLATIONS OF VIRGINIA UNIFORM TRADE SECRETS ACT
### (Against All Defendants)

68.     The allegations in paragraphs 1 through 67 are incorporated by reference as if fully set forth herein.

69.     REG and STG Solar acquired the trade secrets of Timmons while they knew and/or had reason to know that the trade secrets were acquired by improper means.

70.     Timmons never provided express or implied consent for the disclosure, acquisition, or control of Timmons's trade secrets.

71.     REG and STG Solar used improper means to acquire the trade secrets and at the time that they acquired the trade secrets knew or had reason to know that the knowledge of the trade secrets was:

> d.  derived from or through a person, McGavran, who had used improper means to acquire the trade secrets;
>
> e.  acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets; and/or
>
> f.  derived from or through a person, McGavran, who owed a duty to Timmons to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

72.     Timmons has been damaged by Defendants' violations of the Uniform Trade Secrets Act.

**COUNT THREE – CONSPIRACY UNDER VA. CODE § 18.2-499**
**(Against All Defendants)**

73.     The allegations in paragraphs 1 through 72 above are incorporated by reference as if fully set forth herein.

74.     McGavran, REG, and STG Solar acted in combination with each other for the purpose of willfully and/or maliciously injuring Timmons in its business.

75.     The actions of Defendants resulted in damages to Timmons.

## COUNT FOUR – CONSPIRACY IN VIOLATION OF VIRGINIA COMMON LAW
### (Against All Defendants)

76.    The allegations in paragraphs 1 through 75 above are incorporated by reference as if fully set forth herein.

77.    McGavran, REG, and STG Solar acted in combination with each other to accomplish the theft of Timmons's confidential information and trade secrets by unlawful means.

78.    The actions of Defendants resulted in damages to Timmons.

## COUNT FIVE – BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY
### (Against McGavran)

79.    The allegations in paragraphs 1 through 78 above are incorporated by reference as if fully set forth herein.

80.    As an employee of Timmons, McGavran owed to Timmons a duty of good faith, loyalty, and honesty.

81.    By the actions described herein, including but not limited to engaging in competitive employment while still employed by Timmons, misappropriating Timmons trade secret and confidential information and, upon information and belief, using the confidential and trade secret information of Timmons to the improper advantage of his competitive employer while still employed with Timmons, McGavran was disloyal to Timmons, put his own interests above those of Timmons, and breached his fiduciary duty and/or duty of loyalty to Timmons.

82.    McGavran's breach of his fiduciary duty and/or duty of loyalty to Timmons has directly and proximately caused and continues to cause Timmons to suffer irreparable and significant economic harm and damages in an amount to be proven at trial.

83.     McGavran's actions were malicious, intentional, wanton, willful, in conscious disregard of Timmons' rights, and without legal justification. Accordingly, Timmons is entitled to punitive damages.

## COUNT SIX – BREACH OF CONTRACT
### (Against McGavran)

84.     The allegations in paragraphs 1 through 83 are incorporated by reference as if fully set forth herein.

85.     The Employment Agreement is an enforceable, valid, and binding contract between Timmons and McGavran.

86.     The restrictions contained in the Employment Agreement relating to confidentiality, non-solicitation, and non-competition are valid and enforceable.

87.     The restraints imposed by the restrictions contained in the Employment Agreement are no greater than necessary to protect Timmons's legitimate business interests, as set forth above.

88.     The restraints imposed in the Employment Agreement are not unreasonably harsh or oppressive in curtailing McGavran's legitimate efforts to earn a livelihood.

89.     The two (2) year limitation with respect to the non-competition provision, and the two (2) year limitation with respect to the non-solicitation provisions are reasonable in light of McGavran's former high-level position with Timmons, the substantial consideration that Timmons paid to EPI for EPI's release of its claims against McGavran including release of his obligations under his restrictive covenant obligations to EPI, the duration of McGavran's employment and overall business relationship with Timmons, his substantial contact with and knowledge of multiple customers of Timmons, his substantial knowledge and experience with respect to the confidential and proprietary business practices of Timmons, his exposure to

sensitive confidential information and trade secrets of Timmons, and the competitive nature of Timmons' business.

90.     The geographic limitation of the non-competition provision contained in the Employment Agreement is reasonable based on the nature of Timmons' business and McGavran's express acknowledgment in the Employment Agreement that the restrictions are reasonable to protect Timmons' business interests.

91.     The scope of the activities proscribed by the restriction on competition is reasonable, and thus lawful and enforceable, as it only limits McGavran from performing services for any business that is in competition with Timmons in a position where he would perform the same or substantially similarly duties that he performed for Timmons within the last twelve (12) months of his employment with Timmons.

92.     McGavran is performing and will continue to perform the same or substantially similar type of employment activities that he performed for Timmons to a competing company in a prohibited geographic area, and during the prohibited time frame in violation of the Employment Agreement.

93.     As a direct and proximate result of McGavran's breaches of the Employment Agreement, Timmons has suffered and will continue to suffer, irreparable harm and damage to its business, including the potential for lost profits, loss of good will, loss of customers, diminution of its competitive position in the marketplace, as well as other damages.

## COUNT SEVEN – COMMON LAW CONVERSION
### (Against All Defendants)

94.     The allegations in paragraphs 1 through 93 are incorporated by reference as if fully set forth herein.

95.    Without permission from Timmons, McGavran, REG, and STG Solar have retained and continue to retain Timmons' property, including documents and information containing proprietary business and trade secret information regarding Timmons' business, decommissioning plans, pricing information, customers, sales, and strategies.

96.    Timmons has made demands for return of its property.

97.    Timmons has clear legal ownership and right to possession of its property, including legal ownership and right to possession.

98.    Defendants have wrongfully misappropriated and exercised authority over Timmons' property for their own benefit and to Timmons' detriment.

99.    Defendants are aware that they did not and do not have authority to retain such property, have been specifically advised that their continued possession of the property is unauthorized, and that such continued possession of the property is in contravention of, and inconsistent with, Timmons' right of ownership.

100.    Due to Defendants' conversion, Timmons has been deprived of its property and information and has suffered and continues to suffer damages in an amount to be proven at trial.

101.    Defendants' actions were malicious, intentional, wanton, willful, in conscious disregard of Timmons' rights, and without legal justification. Accordingly, Timmons is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Timmons respectfully requests the following relief:

A.    A preliminary and permanent injunction be issued that:

1.    enjoins McGavran and all those acting in concert with him from using or disclosing any of Timmons's confidential and proprietary information or trade secrets, as

required by the Proprietary Information provision contained in Section 4 of McGavran's Employment Agreement;

2.      enjoins REG and STG Solar and all those acting in concert with them from using or disclosing any of Timmons's confidential and proprietary information or trade secrets communicated or otherwise provided to them by McGavran;

3.      enjoins McGavran and all those acting in concert with him for a period of two (2) years from the date this Court enters a final order enforcing the terms of Section 5 (including its subparts a through c) of the Employment Agreement from competing with Timmons by directly or indirectly:

     a.  owning or managing any business offering the Restricted Services (as defined in the Employment Agreement) within Virginia, Maryland, Texas and North Carolina;

     b.  working as an employee, consultant, or independent contractor in a Competing Position (as defined in the Employment Agreement) for any individual or entity offering the Restricted Services (as defined in the Employment Agreement) within Virginia, Maryland, Texas and North Carolina; and

     c.  working as an employee, consultant, or independent contractor in a Competing Position (as defined in the Employment Agreement) for any Restricted Company (as defined in the Employment Agreement);

4.      enjoins McGavran and all those acting in concert with him for a period of two (2) years following the date this Court enters a final order enforcing the terms of Section 6 (including its subparts a and b) of the Employment Agreement from, directly or

indirectly, on behalf of McGavran or any individual or entity, at any time or in any manner:

    a.  soliciting or inducing, or attempting to solicit or induce, any employee or independent contractor of Timmons to terminate his or her relationship with Timmons for any reason whatsoever, or hire any individual or entity then employed or engaged by Timmons or employed or engaged by Timmons or employed or engaged by Timmons within a 12-month period preceding the solicitation, provided that McGavran, on behalf of Timmons, had interaction with, or gained confidential information about, such employee or independent contractor during McGavran's employment with Timmons; or

    b.  performing or providing, assisting in the performance or provision of, or soliciting to perform or provide the same, or substantially similar, work, products or services as done or provided by Timmons during the term of McGavran's employment with Timmons, for any Customer (as defined in the Employment Agreement).

B.    Monetary damages in an amount to be proven at trial but in at least the amount of $100,000 to compensate Timmons for losses caused by Defendants' unlawful conduct.

C.    Punitive damages due to McGavran's willful, wanton, malicious conduct and conscious disregard of Timmons's rights arising out of Timmons's breach of fiduciary duty claims.

D.    Punitive damages arising out of Timmons's conversion claim.

E.     An accounting from McGavran, REG and STG Solar of all of Timmons' proprietary, confidential, and trade secret information communicated or otherwise disclosed to REG and STG Solar by McGavran.

F.     Return of all of Timmons' converted property by Defendants in Defendants' possession, custody, or control and after the return of Timmons' converted property back to Timmons, the destruction by Defendants of all copies of Timmons's property in Defendants' possession, custody, or control.

G.     An accounting of all business won or conducted by REG and/or STG Solar using Timmons' confidential information and trade secrets and/or information communicated to REG and/or STG Solar by McGavran, including an accounting of all amounts invoiced or charged to customers for such business, and profits made by REG and/or STG Solar from such business.

H.     Any other relief the Court deems appropriate.

                                                           Respectfully submitted,
                                                           TIMMONS GROUP, INC.

                                                           By: _/s David C. Burton_
                                                                David C. Burton (VA Bar No. 33178)
                                                                WILLIAMS MULLEN
                                                                222 Central Park Avenue, Suite 1700
                                                                Virginia Beach, Virginia 23462
                                                                Telephone: (757) 473-5354
                                                                Facsimile: (757) 473-0395
                                                                dburton@williamsmullen.com

Yiorgos L. Koliopoulos (VA Bar No. 93608)
WILLIAMS MULLEN
222 Central Park Avenue, Suite 1700
Virginia Beach, VA  23462
Telephone: (757) 499-8800
Facsimile: (757) 473-0395
gkoliopoulos@williamsmullen.com

Matthew T. Anderson (VA Bar No. 86322)
Counsel for Plaintiff
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6289
Facsimile: (804) 420-6507
manderson@williamsmullen.com

*Counsel for Plaintiff*